STEAGALL, Justice.
Betty Word, a volunteer with the Piedmont Emergency Rescue Squad, Inc. (the “Rescue Squad”), recovered a judgment against the Rescue Squad for injuries she sustained when the 1984 Ford ambulance in which she was riding collided with two other automobiles. The ambulance was owned by the Rescue Squad.
After the judgment was entered, Word filed a garnishment proceeding against Aetna Insurance Company (“Aetna”), which had issued a liability insurance policy to the Rescue Squad. Aetna answered, stating that the Rescue Squad was not employed by Aetna, that Aetna was not indebted to the Rescue Squad, and that Aetna did not have possession or control of any property or monies owned by the Rescue Squad. Aetna denied that it owed any insurance coverage to the Rescue Squad or that it had any duty to indemnify the Rescue Squad for the judgment entered for Word, and Aetna denied that it was responsible to Word for the payment of the judgment. The trial court entered a summary judgment in favor of Word on the garnishment, and Aetna appeals.
*267 In its summary judgment order, the trial court stated, in pertinent part:
“The Court finds that, unless a valid endorsement defeats coverage provided to the Rescue Squad under policy number H01316813, the event causing injuries to plaintiff Betty Word is within the coverage provided under the policy.
[[Image here]]
“On or about March 27, 1991, Aet-na produced policy number H01316813, certified as follows:
“ ‘This is a true and complete certified copy of policy # H01316813.
/s/ HI Thomas 3/27/91’
“Inserted into the copy produced with the box ‘X Applies’ checked was endorsement DA 1L72 (10-1-87). Such endorsement is not listed on the Declaration Sheet. Also, as the affidavit of David Parsons dated August 30, 1991, clearly shows, this endorsement was not approved by the Alabama Department of Insurance until October 23, 1987, and became effective for use on December 1, 1987. The Rescue Squad policy period was September 15, 1987, to September 15, 1988. The accident occurred November 30, 1987. No explanation has ever been offered as to why Aetna certified the endorsement to be a part of the policy certified to the Court as a ‘complete and certified copy.’ Had plaintiff’s attorney relied upon the certification as a true and correct copy, Aetna would have been entitled to a summary judgment on the garnishment as a matter of law.
“The attachments to Mr. Parsons’s affidavit of August 30, 1991, show the markings and procedure used by the Department of Insurance as to receiving, approving, and marking of filings with the Department. A filing shows a receiving stamp date and each page of the filing is marked ‘APPROVED’ with date of approval, as well as ‘EFFECTIVE’ with effective date, and ‘Alabama Department of Insurance.’ The ‘APPROVED’ and ‘EFFECTIVE’ appear on each page of this filing....
“Aetna has also sought to establish Endorsement Form CA 20 07 (Ed. 01 78) as to why no coverage was provided. This endorsement is listed on the Declaration sheet of the Rescue Squad policy. However, the affidavit of David Parsons, Deputy Commissioner, State of Alabama Department of Insurance, dated July 19, 1991, shows that this Endorsement had not been accepted or approved for use in the State of Alabama. Mr. Parsons stated by affidavit:
“ T have examined an endorsement number CA 20 07 (Ed 01 78). A copy of this endorsement is attached to this affidavit as Exhibit ‘A’ and made a part hereof. The Department of Insurance has no record in our files of this particular endorsement form, CA 20 07 (Ed. 01 78), having been accepted or approved by the Commissioner of the State of Alabama Department of Insurance for use in the State of Alabama by CIGNA Insurance Company or by Aetna Insurance Company on or before September 15, 1987.’
“Aetna has not produced any document from its own files and records or from the files and records of the office of the Department of Insurance to show that Endorsement form CA 20 07 (Ed. 01 78) has been approved for use in the State of Alabama. The insertion of an unapproved Endorsement into a policy is a nullity. Coverage cannot be defeated or denied based on an unapproved Endorsement.
“With no documents or evidence submitted to show a timely approval of CA 20 07 (Ed. 01 78) by the Department of Insurance, Aetna sought to convince this Court that another and different endorsement ... allegedly submitted by Insurance Services Office, Inc., is ‘just as good’ and relieves Aetna from meeting the requirements of the Alabama statute, Ala. Code 1975, § 27-14-8. Being a regulatory statute, § 27-14-8 must be strictly construed and followed. Attached to Mr. Parsons’s affidavit is a letter from Insurance Services Office, Inc., dated October 17, 1985. There is no proof before the Court that Insurance Services Office, Inc., was authorized or directed to make any submissions on behalf of Aetna in *268 1985, 1986, or 1987. No mention is made of a filing on behalf of Aetna. The first paragraph of the letter states:
“ ‘Insurance Services Office, Inc., on behalf of member and subscriber companies which have granted us filing authority, hereby submit the attached material.’
“The submission, the contents of which are not furnished to the court, was ‘on behalf of member and subscriber companies which have granted us filing authority....’ No filing authority from Aetna is shown, nor does the letter suggest a filing of anything for Aetna. In fact, during this period of time, Aetna was filing for itself....
“The reference on the Insurance Services letter is:
‘“INSURANCE SERVICES OFFICE, INC.
FILING: CA 85 085SF Introduction of the Commercial Auto Coverage Part Program Edition 01-87’
“The CA 85 085SF is not shown. Only the letter itself is shown to be ‘RECEIVED,’ ‘APPROVED,’ and ‘EFFECTIVE.’ This Court will not speculate as to the content of CA 85 085SF.
“Also submitted with the Parsons affidavit of October 17, 1991, is a form CA 20 30 0187, a form different from CA 20 07 (Ed. 01 78). This form appears to be a form developed by Insurance Services Office, Inc., but obviously is not the same as the Endorsement in question, CA 20 07 (Ed. 01 78), or a later edition of CA 20 07 (Ed. 01 78). It is a different form. Form CA 20 07 (Ed. 01 78) is a ‘Buy Back’ form whereby one of two exclusions, namely Exclusion ‘B,’ can be removed from the exclusionary endorsement by the payment of an additional premium for its removal. The exclusion of ‘B,’ however, would not eliminate Exclusion ‘A.’ This Court can conceive of no event excluded by ‘B’ that would not, nevertheless, still be excluded by Exclusion ‘A’ of the endorsement. It would appear that the ‘Buy Back’ of Exclusion ‘B’ would, in effect, purchase no additional coverage.
“Form CA 20 30 01 87 submitted to the Court has no State of Alabama ‘RECEIVED’ stamp, ‘APPROVED’ stamp, or ‘EFFECTIVE’ stamp. It appears to be a form that has been removed from a loose-leaf notebook. Three punch holes appear at the left margin of the form submitted.
“The Court finds that no substantial evidence is before the Court which would show or prove that this other and different endorsement form, CA 20 30 01 87, has been accepted or approved by the Commissioner of the State of Alabama Department of Insurance for use in the State of Alabama by Aetna Insurance Company.
“The insurance industry is a highly regulated business. The requirements of Ala. Code 1975, § 27-14-8, must be followed before an exclusionary endorsement can be made a part of a policy issued in this State. This was not done. The endorsement in the Aetna policy issued to the Rescue Squad was null and void. The garnishee, Aetna, did provide liability coverage to the Rescue Squad in limits of $500,000. Plaintiff Betty Word is entitled to summary judgment against, garnishee Aetna on the garnishment, plus interest at twelve percent (12%) from October 26, 1990, which is the date of the judgment against the Piedmont Emergency Rescue Squad, Inc.”
In order to enter a summary judgment, the trial court must determine that there is no genuine issue of material fact and that the moving party is entitled to the judgment as a matter of law. Rule 56, A.R.Civ.P. This case was filed after June 11, 1987; accordingly, the “substantial evidence rule” applies to the ruling on the motion for summary judgment. Ala.Code 1975, § 12-21-12. In order to defeat a properly supported motion for summary judgment, the nonmovant must present substantial evidence creating a genuine issue of material fact. Betts v. McDonald’s Corp., 567 So.2d 1252 (Ala.1990). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reason *269 ably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
After reviewing the record before us, we agree with the trial court that Aetna has failed to produce substantial evidence to rebut the prima facie showing that the endorsement in question was not filed with, and approved by, the Alabama Department of Insurance, as required by Ala.Code 1975, § 27-14-8. Accordingly, the trial court’s judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, KENNEDY and INGRAM, JJ., concur.