Gladys Wint appeals from a summary judgment entered for Alabama Eye Tissue Bank, which was one of three defendants in an action alleging conversion and trespass to chattels.
 FACTS
On April 9, 1991, at approximately 10:35 a.m., Mrs. Wint's husband, Leroy Wint, Jr., died after having been admitted to Providence Hospital in Mobile. The supervising nurse on duty that morning approached Mrs. Wint shortly thereafter and asked her whether she would consider allowing Mr. Wint's body to be used for organ donations, specifically mentioning the possibility of donating Wint's eyes. She refused. The supervising nurse notified Alabama Eye Tissue Bank of the refusal at approximately 11:00 a.m. *Page 384 
At approximately 3:00 p.m. that same day, Dr. Leland C. Edmonds, a Providence Hospital pathologist, performed an autopsy on the body of Leroy Wint at Providence Hospital. In his autopsy report, he wrote "Eyes have previously been collected by the Eye Bank." The body was then sent to the Radney Funeral Home in Saraland for embalming.
In July 1991, a copy of Dr. Edmonds's autopsy report was sent to the Wint family. The family noticed Edmonds's statement regarding the eyes and contacted Providence Hospital. The hospital administration informed the family that it had no records indicating that Mr. Wint's eyes had been removed and that Edmonds's statement was in error. After being asked by the hospital administration to review his notes from the Wint autopsy, Edmonds issued a statement indicating that his initial statement about the eyes was the result of an error in transcribing the autopsy report and that he believed Mr. Wint's eyes had not been removed when he examined the body.
Mr. Wint's body was exhumed on November 23, 1994, after Mrs. Wint had filed this action. Dr. Leroy Riddick, a state medical examiner, examined the body, finding that both eyes were absent and finding in the eye sockets only plastic eye caps used to support the eyelids. At his deposition, Dr. Riddick testified that the enucleation procedure performed on Mr. Wint's body did not seem to be consistent with the procedures normally followed in removing an organ donor's eyes. He stated (1) that cotton was not used to pack under the eye caps and (2) that none of the muscle or tendon tissue that connects the eye to the eye socket was left in the socket.
After reviewing Dr. Riddick's report from the exhumation, Dr. Edmonds again changed his story. He stated that he again believed that his initial statement that Mr. Wint's eyes had been removed, made at the time of the autopsy, was correct, but that his statement that the eye bank had taken the eyes was based merely upon an assumption.
 PROCEDURAL HISTORY
On December 17, 1993, Gladys Wint sued Providence Hospital and Alabama Eye Tissue Bank, alleging conversion and trespass to chattels. She settled her claims against Providence Hospital in 1994. On January 9, 1995, she amended her complaint to add Radney Funeral Home as a defendant.
Alabama Eye Tissue Bank filed its initial motion for summary judgment on December 22, 1994, arguing a lack of substantial evidence to support the plaintiff's conversion and trespass to chattel claims against it. It supported its motion by an affidavit from Alabama Eye Tissue Bank's vice president of operations and by excerpts from deposition testimony by various of the plaintiff's witnesses.[1] In January 1995, Alabama Eye Tissue Bank filed a supplemental brief in support of its summary judgment motion, arguing that the plaintiff had filed her complaint beyond the two-year period allowed by Ala. Code 1975, § 6-2-38(n), for claims based upon the doctrine of respondeat superior. The trial judge granted the eye bank's summary judgment motion on April 5, 1995, citing no grounds for his decision. Gladys Wint appeals from the summary judgment.
This appeal presents two issues: (1) Whether the plaintiff presented substantial evidence tending to show that anyone associated with Alabama Eye Tissue Bank took Leroy Wint's eyes against his family's wishes, and (2) whether Ala. Code 1975, § 6-2-38(n), which provides a two-year statute of limitations for respondeat superior actions, applies to bar the plaintiff's claims against Alabama Eye Tissue Bank.
 I. SUBSTANTIAL EVIDENCE
Because "[t]he difference between trespass to chattels and conversion is immaterial *Page 385 
when there is a 'wrongful taking and carrying away of the property of another,' " there is no need to treat the trespass to chattels and conversion claims separately. Roberts and Cusimano, Alabama Tort Law Handbook, § 29.0, p. 598 (1990) (citing Roberson v. Harris, 45 Ala. App. 537, 233 So.2d 96
(1970)). In order to recover from Alabama Eye Tissue Bank under either of her theories, Mrs. Wint must prove that someone from the eye bank took or carried away Leroy Wint's eyes.
Once Alabama Eye Tissue Bank made a prima facie showing that none of its employees took or carried away Leroy Wint's eyes, "the burden shift[ed] to the nonmovant [Mrs. Wint] to produce 'substantial evidence' creating . . . a [genuine] dispute" as to whether one of Alabama Eye Tissue Bank's employees took or carried away the eyes. Mardis v. Ford MotorCredit Co., 642 So.2d 701, 704 (Ala. 1994) (citing § 12-21-12, Ala. Code 1975; Bean v. Craig, 557 So.2d 1249, 1252 (Ala. 1990)).
To rebut Alabama Eye Tissue Bank's prima facie showing, Mrs. Wint proffered evidence indicating the following: (1) Alabama Eye Tissue Bank was contacted by a nurse from Providence Hospital at 11:00 a.m. and informed of Leroy Wint's death and of the family's refusal to donate his eyes; (2) The hospital did not before the autopsy inform anyone outside the hospital of Mr. Wint's death, other than his family and the eye bank; (3) Leroy Wint's eyes were not present at 3:00 p.m. when the first autopsy was done, and Dr. Edmonds assumed that Alabama Eye Tissue Bank had taken his eyes; (4) Alabama Eye Tissue Bank is the only entity authorized to harvest donated eyes at Providence Hospital and is the only entity that does so in Alabama; (5) The enucleation procedure takes only 10 to 15 minutes and is usually done in the morgue, but occasionally is done in the deceased's hospital room; (6) Dr. Edmonds, under pressure, recanted his earlier statement that Mr. Wint's eyes were missing at the time of the initial autopsy, but, after the exhumation report confirmed that Mr. Wint's eyes had been taken, reaffirmed his original statement that Mr. Wint's eyes had been missing at the time of the autopsy.
In Smoyer v. Birmingham Area Chamber of Commerce,517 So.2d 585 (Ala. 1987), this Court upheld a summary judgment based upon the trial court's conclusion that the plaintiff had produced insufficient evidence of causation to support her negligence claim; this Court held: "Evidence that affords nothing more than a mere speculation, conjecture, or guess is completely insufficient to warrant the submission of a case to the jury." 517 So.2d at 588 (citing Sprayberry v. First National Bank,465 So.2d 1111 (Ala. 1984); Headrick v. United Insurance Co. ofAmerica, 279 Ala. 82, 181 So.2d 896 (1966)). Mrs. Wint's claims against Alabama Eye Tissue Bank are based merely upon conjecture or guess.
After ample time to discover and search the records of Alabama Eye Tissue Bank, Providence Hospital, and the American Red Cross,[2] the plaintiff had found no document connecting Alabama Eye Tissue Bank with the disappearance of Mr. Wint's eyes. The plaintiff was unable to find records of any eye tissue collected by Alabama Eye Tissue Bank that was not documented to have come from a legitimate donor. In fact, the plaintiff could not find any record showing that an eye bank employee was present anywhere in Providence Hospital on the day of Leroy Wint's death.[3] Even though the eyes must have been taken between 11:00 a.m. and 3:00 p.m. in a busy metropolitan hospital, the plaintiff failed to locate — and thus produced no testimony from — anyone who saw an Alabama Eye Tissue Bank employee at Providence Hospital that day. *Page 386 
The plaintiff failed to produce "substantial evidence" tending to show that any employee of Alabama Eye Tissue Bank was in any way connected with the taking of Leroy Wint's eyes. Evidence that is sufficient only to raise speculation or conjecture is not "substantial evidence" and is insufficient to create a genuine issue of fact.
 II. STATUTE OF LIMITATIONS
Gladys Wint also argues that the summary judgment cannot be upheld on the basis that her action was barred by Ala. Code 1975, § 6-2-38(n). Section 6-2-38(n) states:
 "All actions commenced to recover damages for injury to the person or property of another wherein a principal or master is sought to be held liable for the act or conduct of his agent, servant, or employee under the doctrine of respondeat superior must be brought within two years."
Alabama Eye Tissue Bank argues that Mrs. Wint's claims are based totally upon a theory of respondeat superior.
The problem of distinguishing between a direct trespass or conversion action governed by the six-year statute of limitations found in § 6-2-34 and a trespass or conversion action based upon respondeat superior governed by the two-year statute of limitations of § 6-2-38(n) is virtually identical to the problem of distinguishing between trespass and trespass on the case. Before Alabama's current statute of limitations scheme went into effect, Alabama courts were forced to distinguish between trespass and trespass on the case in applying a now repealed statute of limitations that made such a distinction. Trespass actions against employers premised totally upon a theory of respondeat superior were held to be trespass-on-the-case actions, while trespass actions based upon a theory that the employer took "personal hand in the trespass, by directing, aiding, participating in, or ratifying the trespass committed by that person's active agent or joint participant" were held to be trespass actions, not trespass-on-the-case actions. Hatfield v. Spears,380 So.2d 262, 264 (Ala. 1980) (citing C.O. Osborn Contracting Co. v.Alabama Gas Corp., 273 Ala. 6, 135 So.2d 166 (1961); Trognitzv. Fry, 215 Ala. 609, 112 So. 156 (1927)).[4]
In Sasser v. Dixon, 290 Ala. 17, 18, 273 So.2d 182, 182
(1973), this Court wrote, "It is settled in our law that an action of trespass on the case is governed by the statute of limitations of one year, while if the allegation and proof show trespass the six year statute applies." The case of CitizensBank Savings Co. v. Wolfe Sales Co., 394 So.2d 941
(Ala. 1981), involved an action alleging trespass to realty. The plaintiff alleged that employees of Wolfe Sales had "inflicted excessive damage to the realty" to which was affixed certain equipment that Wolfe Sales employees repossessed. 394 So.2d at 942. This Court held that "the action sued upon is governed by the one-year statute of limitations set out in § 6-2-39(a)(5) [now repealed] . . . , [because] the allegations of the plaintiff's complaint show trespass on the case, as distinguished from trespass." Id.
Likewise, the two-year limitation of § 6-2-38(n) applies to bar a plaintiff's claims against an employer based upon the intentional torts of the employer's servants, unless the plaintiff's "allegations and proof show" that the defendant employer directed, aided, participated in, or ratified the alleged tortious conduct of the servant. See, e.g., Hatfield v.Spears, supra; C.O. Osborn Contracting Co., supra,273 Ala. at 8, 135 So.2d at 168.
Mrs. Wint asserts two theories to support her contention that Alabama Eye Tissue Bank ratified the tortious conduct of its employee — unknown to Mrs. Wint — who she alleges took Leroy Wint's eyes. First, she claims that the receipt by Peter Green, an employee of Alabama Eye Tissue Bank, of the nurse's telephone call notifying the eye bank of Leroy Wint's death and notifying it that the family did not wish to donate his eyes constitutes an "act of ratification" of the tortious taking of Mr. Wint's eyes. This claim is incorrect, because it is not possible for a ratification of a tort to occur before the *Page 387 
tort itself. Neither can it be argued that the receipt of the routine telephone notification of the death and of the family's wishes constituted corporate participation in, aid toward, or direction to commit, the alleged tort itself.
Second, Mrs. Wint alleges that Alabama Eye Tissue Bank sold Leroy Wint's eyes and she says this sale constituted ratification of the eye bank's unknown servant's tortious taking. There is no evidence of such a sale. If Mrs. Wint could produce substantial evidence tending to establish that an Alabama Eye Tissue Bank manager or corporate official sold the missing eyes with knowledge of their wrongful taking, then she would certainly be able to establish ratification, but mere speculation or conjecture as to what happened to the missing eyes is not sufficient to establish corporate ratification and thereby cause her claim against the eye bank to be governed by § 6-2-34, which provides a longer limitations period.
Because Gladys Wint failed to sue Alabama Eye Tissue Bank within two years of the alleged taking or carrying away of Mr. Wint's eyes by some unknown employee of the eye bank, her claims are barred by § 6-2-38(n).
For the foregoing reasons, the summary judgment is affirmed.
AFFIRMED.
HOOPER, C.J., and ALMON and INGRAM, JJ., concur.
BUTTS, J., concurs in the result.
[1] These included excerpts from the deposition of Randall Wayne Betsch, vice president of operations of the eye bank, who testified that a donation of Mr. Wint's eyes would have been turned down even if made by his family, because Mr. Wint's hospital charts showed that he was suffering from a serious infection and had an elevated white blood count when he died. Betsch testified that eye bank technicians are trained to check a potential donor's charts and to consult with the physician who pronounced the donor dead to verify that the eyes are usable, before ever removing them.
[2] Deposition testimony indicated that Alabama Eye Tissue Bank sends a blood sample from every donor to the Red Cross for tests to determine if the donor was a carrier of any blood-borne diseases, such as hepatitis and HIV. The Red Cross's search of its own records showed that there had been no blood samples sent to it from the Mobile area by the eye bank for testing from any person who died on the date of Leroy Wint's death.
[3] The eye bank produced security records of the hospital morgue. Those records failed to show that any of the eye bank's employees were present at the morgue that day for any purpose.
[4] This is the law in Alabama, notwithstanding any contrary statement of the law of trespass made by the Alabama Court of Civil Appeals in Collum v. Argo, 599 So.2d 1210, 1212
(Ala.Civ.App. 1992), which we cannot reconcile with our prior cases discussing the distinction between trespass and trespass on the case.