**Linda J. SHULTS and Royal E. Shults, Plaintiffs,**

**v.**

**UNITED STATES of America, Department of the Air Force, Lt. Col. Doroteo A. Vicente, Col. John M. Dorger, Commander Major General, USAF, John C. Griffith, Defendants.**

No. Civ.A. 97–4078–DES.

United States District Court, D. Kansas.

Feb. 25, 1998.

Patrick E. Henderson, Atchison, KS, for plaintiffs.

Nancy M. Landis, Topeka, KS, for defendants.

Nancy M. Landis, (See above), for Department of the Air Force, defendant.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant United States of America's Partial Motion to Dismiss, Or, In the Alternative, Motion for Partial Summary Judgment (Doc. 20). Because defendant has referred to matters outside of the pleadings, defendant's motion shall be construed as a motion for partial summary judgment pursuant to Fed.R.Civ.P. 56(c). For the reasons set forth below, defendant's motion is granted.

## I. BACKGROUND

The following facts are undisputed:

Linda J. Shults and Royal E. Shults are the parents of Air Force Airman First Class Allen W. Shults, deceased. On the morning of July 2, 1992, Airman Shults was found dead in his dormitory room at Keesler Air Force Base in Mississippi. Airman Shults was found hanging from his neck by a bed sheet attached to the automatic door closing mechanism of the main entrance to his dormitory room. An autopsy was performed on the body of Airman Shults the afternoon of July 2, 1992, by Lt. Col. Doroteo A. Vicente, a staff pathologist at the Department of Pathology and Laboratory Medicine at Keesler Medical Center. Lt. Col. Vicente determined the cause of death to be a combination of asphyxia and cerebral vascular insufficiency due to hanging.[1]

During the immediate autopsy process, the brain and spinal cord were removed, examined and saved in total, along with the heart, the kidneys, the adrenal glands, and the thyroid gland. The brain was perfused for two weeks in formalin before completion of its

---

**1.** Plaintiff Linda J. Shults disagrees with the conclusions made by Dr. Vicente in his Autopsy Report and disagrees with the circumstances of his death. Those facts, however, are not material to the determination of the issue here, which is whether the Air Force's disposition and disposal of the remains after Airman Shults' autopsy is actionable under the FTCA.

gross and then later its microscopic examination. The heart was first examined and then fixed in total in formalin for additional examination at a later time. After the gross examination of the body was completed, representative portions of the lungs, liver, gallbladder, spleen, pancreas, esophagus, stomach, large and small bowel, bladder and prostate were all saved in formalin. Portions of the kidneys, liver and brain were frozen for subsequent toxicological studies.

Those portions of the lungs, liver, gallbladder, spleen, esophagus, stomach, large and small bowel, bladder with ureters, and prostate gland that were not saved for later microscopic examination were incinerated. Portions of all formalin-fixed tissues were subsequently blocked and prepared for microscopic examination. After completion of the autopsy, the body was sent that same day, July 2, 1992, to the Bradford O'Keefe Funeral Home in Gulfport, Mississippi. Lt. Col. Vicente's autopsy report, along with all slides and blocks on the case were sent to the Armed Forces Institute of Pathology (AFIP) for review. Sometime after December 1992, after receipt and distribution of the AFIP's concurring review on the case, the remaining unblocked, formalin-fixed tissues, including the brain and heart, were disposed of by incineration. All tissue blocks and glass slides from the case are on file at the AFIP.

In March 1994, nearly two years after his death, Mr. and Mrs. Shults had Airman Shults' body exhumed. A second autopsy was then attempted during which it was discovered that portions of the organs and tissues removed during the autopsy conducted by the Air Force were not returned to the remains. As a result of this information, plaintiff Linda J. Shults filed an administrative claim against the Air Force on July 1, 1994, demanding the amount of $1,000,691.00. The Air Force mailed notice to plaintiff on October 23, 1996, that it was denying the claim. Plaintiff filed this action within six months of the denial of her claim on April 23, 1997.

On September 22, 1997, defendant United States of America filed a Motion to Dismiss the three individual defendants on the basis that under the Federal Tort Claims Act, a suit against the United States is the exclusive remedy for persons with claims for damages resulting from the actions of federal employees acting within the course and scope of their employment. *See* 28 U.S.C. § 2679(b)(1). Defendant also filed a motion to dismiss Royal B. Shults as a party plaintiff, contending that Royal Shults' claim is barred because he failed to file an administrative claim in this action, which is a jurisdictional prerequisite to suit. On December 19, 1997, the court entered an order granting defendant United States' motion to dismiss individual defendants Lieutenant Colonel Doroteo A. Vicente, Colonel John M. Dorger, and Major General John C. Griffith and substituting the United States as the sole defendant. The court also entered an order, on January 9, 1998, granting defendant United States' motion to dismiss plaintiff Royal E. Shults for lack of subject matter jurisdiction.

## II. SUMMARY JUDGMENT STANDARD

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548,

91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250.

### III. DISCUSSION

Plaintiff asserts four counts: (I) Intentional Infliction of Emotional Distress; (II) Conversion of Personal Effects; (III) "Conversion of Decedent;" and (IV) "Negligent Mishandling of Body and Unlawful Interference With Rights of Possession of Deceased Body for Burial." Defendant seeks summary judgment on counts I, III, and IV for lack of subject matter jurisdiction. According to defendant, these causes of action must fail because there is no basis for a waiver of sovereign immunity under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et. seq.* ("FTCA").

■ The FTCA provides a broad waiver of sovereign immunity for "the negligent or wrongful act or omission" of any government employee acting in the scope of his or her employment to the extent that a private person would be liable in similar circumstances under state law. *See* 28 U.S.C. § 1346(b). Pursuant to the FTCA, the United States is liable in tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Liability arises "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). However, "even if specific behavior is statutorily required of a federal employee, the government is not liable under the FTCA unless state law recognizes a comparable liability for private persons." *Ayala v. U.S.,* 49 F.3d 607 (10th Cir.1995). The court must therefore look to the law of the state in which the alleged tortious activity occurred to resolve questions of liability under the FTCA. *See Franklin v. United States,* 992 F.2d 1492, 1495 (10th Cir.1993).

### A. Negligent Mishandling Claim

■ Under Mississippi law, the elements of proof required to support a claim for damages for negligence are a duty owed to the plaintiff, a breach of that duty, damages, and proximate cause. *Crain v. Cleveland Lodge 1532, Order of Moose, Inc.,* 641 So.2d 1186 (Miss.1994). The threshold question in any negligence action is therefore whether there exists "some obligation or duty toward the plaintiff which the defendant has left undischarged or unfulfilled." *Foster by Foster v. Bass,* 575 So.2d 967, 972 (Miss.1990). The existence of a duty of care is a question of law to be decided by the Court. *Id.*

Plaintiff first contends that the combination of Department of Defense ("DOD") Directive 6465.2 and Mississippi law creates an actionable duty to plaintiff. DOD Directive 6465.2 provides that all organs, tissues, etc. removed during an autopsy are to be returned to the remains before releasing the body to mortuary officials, unless authorized by next of kin or items are required for

determination of cause of death. The applicable Mississippi statute provides as follows:

Any physician removing or otherwise acquiring any tissue of the human body may, in his discretion, after making or causing to be made such scientific examination of the same as he may deem appropriate or as may be required by law, custom or rules and regulations of the hospital or other institution in which the tissue may have been removed or acquired, authorize disposition of the same by incineration, cremation, burial or other sanitary method approved by the state board of health, unless he shall have been furnished prior to removal or acquisition of the tissue, or at any time prior to its disposal, a written request that the same be delivered to the patient or someone in his behalf or, if death has occurred, to the person claiming the dead body for burial or cremation. No such tissue shall be delivered, however, except as may be permitted by rules and regulations of the state board of health. Any hospital or other institution acquiring possession of any such tissue, and not having written instructions to the contrary from the attending physician, the patient or the person claiming a dead body for burial or cremation, or someone in their behalf, may immediately dispose of the same as herein above provided.

Miss.Code Ann. § 41–39–1 (1972).

■ According to plaintiff, discretion to incinerate remains under the Mississippi statute cannot be exercised where the physician has been furnished a written request that the remains be preserved. In this case, plaintiff contends there were two such requests within the meaning of Miss.Code Ann. § 41–39–1. The first request, according to plaintiff, is found in DOD Directive 6465.2. The court disagrees with this characterization of DOD Directive 6465.2 and finds that it is not a written request within the meaning of Miss.Code Ann. § 41–39–1.

Plaintiff also contends that a written request came from Airman Shults' father who, on July 2, 1992, executed a "Statement on Disposition of Remains" on Air Force Form 970, which was delivered prior to the incineration of a portion of Airman Shults' remains. Defendant, however, presents evidence that Form 970 is used solely by the Mortuary Affairs Office to provide instructions to the government-contract funeral home for preparing the remains for transporting them to the receiving funeral home selected by the next of kin. Thus, while Mr. Shults did complete Form 970, giving the Air Force instructions as to where to send the remains, and providing the receiving funeral home with the authority to embalm, groom, and dress their son's body, no instructions were provided to the physician who performed the autopsy regarding the disposition of tissues and organs removed in the autopsy. Accordingly, the court finds that submission of the completed Form 970 to the Air Force did not constitute a "written request" within the meaning of Miss.Code Ann. § 41–39–1.

Even if the conjunction of DOD Directive 6465.2 and Miss.Code Ann. § 41–39–1 does not create an actionable duty under the FTCA, plaintiff argues, "there exists an independent duty under Mississippi law for the United States to refrain from desecrating Airman Shults' remains." In support, plaintiff refers the court to *Daniels v. Adkins Protective Service, Inc.*, 247 So.2d 710 (Miss. 1971), which involved negligent embalming by an apprentice embalmer. In that case, the Mississippi Supreme Court held that in order to recover damages for mental anguish unaccompanied by physical or bodily injury, the burden is on the plaintiff to establish that the defendant's conduct was willful, wanton, malicious or intentional. *Id.*

The *Daniels* decision, however, is readily distinguishable from the present case and does not support plaintiff's argument for the existence of an independent duty. Indeed, the Mississippi court concluded that even though the apprentice embalmer acted in violation of statutory law, such conduct did not amount to willful or wanton negligence. Moreover, the existence of a duty under Mississippi law requiring only licensed embalmers to embalm remains is not applicable to the facts of the present case, in which an authorized autopsy was performed on a deceased member of the armed forces by a licensed military pathologist.

**B. Intentional Infliction of Emotional Distress Claim**

■ Mississippi also recognizes the tort of intentional infliction of emotional distress.

The "standard is whether the defendant's behavior is malicious, intentional, willful, wanton, grossly careless, indifferent or reckless." *Leaf River Forest Products, Inc. v. Ferguson,* 662 So.2d 648 (Miss.1995). Plaintiff suggests the government's conduct was reckless, and therefore is sufficiently severe under Mississippi law to impose liability on the government. The court disagrees. Defendant was guilty of no wrongful act such as was reasonably calculated to either cause the plaintiff to suffer mental pain and anguish or that amounted to a willful, wanton and reckless disregard of her rights to such an extent as to reasonably imply malice. Accordingly, the court finds as a matter of law, that defendant's conduct was not sufficiently reckless, willful, wanton, malicious or intentional for a reasonable factfinder to find in favor of plaintiff.

### C. Unlawful Interference Claim

Mississippi recognizes a cause of action for unlawful interference with the right of possession of remains for burial. *Arnold v. Spears,* 217 Miss. 209, 63 So.2d 850 (1953). Such cause of action requires a showing that the defendant's conduct was willful, wanton, malicious or intentional in order to recover damages for mental anguish unaccompanied by physical or bodily injury. *Id.* at 855. As with the intentional infliction claim, the court finds as a matter of law, that defendant's conduct was not sufficiently reckless, willful, wanton, malicious or intentional for a reasonable factfinder to find in favor of plaintiff.

### D. Conversion of Decedent Claim

To maintain an action for conversion in Mississippi requires a showing that the defendant wrongfully and intentionally exercised dominion, ownership or control over the property of another, to the exclusion of, and disregard for, the rights of the owner. *Kaplan v. Deposit Guaranty Nat. Bank,* 192 So.2d 391 (Miss.1966); *Walker v. Brown,* 501 So.2d 358 (Miss.1987). The measure of damages for conversion of personal property is the value of the property at the time and place of its conversion. *PACCAR Financial Corp. v. Howard,* 615 So.2d 583 (Miss.1993) (citing *Masonite Corporation v. Williamson,* 404 So.2d 565 (Miss.1981)). Punitive or exemplary damages may be awarded for the conversion of another's property if there is evidence of acts which are willful, wrong, malicious, or oppressive. *Phillips Distributors Inc. v. Texaco, Inc.,* 190 So.2d 840 (Miss. 1966).

Notwithstanding the existence of conversion as a cause of action under Mississippi law, the court has significant doubts about the application of the tort of conversion to the particular facts of this case. The question here is whether a person has a property right in the body of a deceased family member sufficient to support an action for conversion. This question has apparently never been addressed by the Mississippi court, although it does appear that Mississippi recognizes a cause of action for unlawful interference with the right of possession of remains for burial.

Several other states have dealt with the issue, however. Some of these states appear to recognize an action for conversion of a dead body or parts thereof. *See, e.g., Perry v. Saint Francis Hosp. and Medical Center, Inc.,* 865 F.Supp. 724 (D.Kan.1994) (citing *Alderman v. Ford,* 146 Kan. 698, 72 P.2d 981 (1937) (recognizing that the next of kin has a personal right to possess the dead body of a relative for purposes of preserving and burying it)); *Wint v. Alabama Eye & Tissue Bank,* 675 So.2d 383 (Ala.1996) (conversion of decedent's eye's). Nevertheless, in the absence of any Mississippi cases recognizing claims for conversion of remains, and in the absence of any clear majority rule on way or the other, the court is most persuaded by the rationale in a recent case from Colorado.

In *Culpepper v. Pearl Street Bldg., Inc.,* the Colorado Supreme Court rejected "the fictional theory that a property right exists in a dead body that would support an action for conversion." 877 P.2d 877, 882 (Colo.1994). The *Culpepper* court recognized that injury resulting from the mishandling of remains "is more properly addressed through a tort action related to the infliction of emotional distress or to mental anguish caused by willful, wanton, or insulting conduct, or through an action for breach of contract and accompanying mental suffering." *Id.* This court agrees with the *Culpepper* court's reasoning and finds that, in the

absence of any Mississippi law to the contrary, plaintiff's injury is properly addressed through an action for unlawful interference with the right of possession of remains for burial, and not for an independent action for conversion. *See Arnold,* 63 So.2d at 850. However, as noted above, such an action requires a showing that the defendant's conduct was willful, wanton, malicious or intentional in order to recover damages for mental anguish unaccompanied by physical or bodily injury.

 Finally, even if the Mississippi court would recognize an independent action for conversion under the facts of this case, plaintiff could not recover because she cannot establish any actual damages. As stated above, under Mississippi law, the measure of damages for conversion of personal property is the value of the property at the time and place of its conversion. *PACCAR,* 615 So.2d at 590. The property that was allegedly converted here, the partial remains of a human body, has no compensable value. *Arnold,* 63 So.2d at 854 (dead body not property in the common commercial sense of that term). At best, plaintiff might recover nominal damages. Failure to establish actual damages, moreover, precludes any recovery for punitive damages. *Allen v. Ritter,* 235 So.2d 253 (Miss.1970) (Exemplary or punitive damages are not recoverable without proof of actual damages.); *Defenbaugh and Co. v. Rogers,* 543 So.2d 1164 (Miss.1989).

The court finds no genuine issue of material fact for trial. The court also finds that defendant is entitled to judgment as a matter of law on counts I, III, and IV for lack of subject matter jurisdiction.

**IT IS THEREFORE BY THE COURT ORDERED** that defendant United States of America's Partial Motion to Dismiss, Or, In the Alternative, Motion for Partial Summary Judgment (Doc. 20) is granted.