On Application for Rehearing

THOMPSON, Judge.
The opinion of April 30, 1999, is withdrawn and the following is substituted therefor.
The plaintiff appeals from a summary judgment entered in favor of the defendant Royal Insurance Company of America, Inc. (“Royal”). On December 13, 1993, while Ravindra J. Waikar was working at his employment with Tulip Corporation, his arm was caught and severed in a plastic-molding machine. Waikar sued Tulip Corporation, several co-employees, and the manufacturer and re-manufacturer of the machine that had caused the injury. The workers’ compensation claim against Tulip Corporation was severed from the action by the trial court’s order dated January 21,1994.
At the time of Waikar’s accident, Tulip Corporation was covered under a general liability insurance policy issued by Royal. The insurance agent, acting on behalf of Tulip Corporation, forwarded the summons and complaint to Royal, requesting defense and indemnity. Mr. George Ma-hon, a claims specialist for Royal, subsequently contacted Tulip Corporation to inform it that Royal was declining coverage for the co-employees named in the complaint. Thereafter, in January 1994, Royal sent letters to each co-employee listed in the complaint informing them that no coverage existed under the general liability policy issued to Tulip Corporation for the claims Waikar had filed against them.
Corporate counsel for Tulip subsequently contacted Royal, challenging Royal’s refusal to provide defense and indemnity to Gary Whitcher, named as a defendant in the action; he was vice president of manufacturing for Tulip. Royal requested and obtained additional information pertaining to Whitcher’s status as an executive officer at Royal and reconsidered its coverage position pertaining to Whitcher in light of this additional information.
The insuring agreement in the policy provided as follows:
“We will pay those sums that the insured becomes legally obligated to pay as damages because of ‘bodily injury’ or ‘property damage’ to which this insurance applies.... This insurance applies only to ‘bodily injury’ and ‘property damage’ which occurs dining the policy period. The ‘bodily injury’ and ‘property damage’ must be caused by an ‘occur *13 rence.’ The ‘occurrence’ must take place in the ‘coverage territory.’ ”
Section II of the policy defined who qualified as an “insured” under the policy as follows:
“1. If you are designated in the Declarations as:
".....
“c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, ‘but only with respect to their liability as stockholders.
“2. Each of the following is also an insured:
“a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, none of these employees is an insured for:
“(1). ‘Bodily injury’ or ‘personal injury’ to you or to a co-employee while in the course of his or her employment....”
The insuring agreement to the policy at issue provided coverage to executive officers, and an endorsement to the policy defined an “executive officer” as “a person holding any of the officer positions created by your charter, constitution or bylaws.” Whitcher was an executive officer under Tulip’s corporate charter, and thus Royal assumed Whitcher’s defense.
The manufacturer of the machine that caused the injury, Lombard Industries, Inc., was dismissed for want of prosecution, on June 29,1994.
On October 30, 1995, Waikar amended his complaint to substitute Paul Babcock, Charles Wilson, and Hal Gragg for defendants named fictitiously in the original complaint. Royal agreed to defend and indemnify Babcock because of his status as Tulip’s director of human resources.
Two named defendants, Alando McMur-try and Charles Wilson, co-employees of Waikar, were dismissed. The remaining “co-employee” defendants entered into a settlement agreement that provided for those defendants to consent to a judgment against them in the amount of $550,000. The agreement further provided that Tulip would pay $50,000 as partial satisfaction of the consent judgment. The agreement also guaranteed that Waikar would not execute the judgment against the remaining defendants, in exchange for assignment of any rights they had under their policy with Royal. The consent judgment in the amount of $550,000 was entered on February 25,1997.
On March 5, 1997, Waikar filed an ancillary proceeding against Royal, seeking a judgment declaring that Royal was liable for paying the $550,000 consent judgment. Royal and Waikar each moved for a summary judgment. The trial court held a hearing on their motions on June 12, 1998.
Waikar settled his claims against the remanufacturer, Emhart Corporation, for $80,000, and Emhart was dismissed by consent on April 24, 1997. The claims against Whitcher and Babcock were settled for $60,000, and these defendants, the sole defendants remaining in the original action, were dismissed on May 29, 1997.
After hearing oral argument on the summary judgment motions in the ancillary proceeding, the trial court requested additional Information regarding whether a typographical error in a number that designated an endorsement on the declarations page of the policy constituted an ambiguity in the policy. Royal submitted affidavits of its underwriting representative and a representative of the insurance services office in response to the trial court’s request for supplemental information. The representatives stated in their affidavits that at the time the policy was issued Royal had no policy form or endorsement designation number in existence that corresponded to the number mistakenly typed on the declarations page. The trial court *14 entered a summary judgment in favor of Royal in the ancillary declaratory-judgment action. Because no further claims against any defendants remained pending after the entry of the summary judgment, that summary judgment was a final judgment. See, e. g., Schiffman v. City of Irondale, 669 So.2d 136 (Ala.1995). Waikar filed a timely notice of appeal to the supreme court. That court transferred the appeal to this court, pursuant to Ala. Code 1975, § 12-2-7.
“In reviewing the disposition of a motion for summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before [it] made out a genuine issue of material fact.” Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a pri-ma facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
On appeal, Waikar asserts that the policy issued by Royal to Tulip for the period during which Waikar’s injury occurred, provided general liability coverage for employees in a managerial or supervisory position; therefore, he says, the trial court erred in failing to find that coverage existed for Waikar’s co-employees who had assigned him their contractual rights in the policy.
In support of his argument, Waikar cites United States Fire Ins. Co. v. McCormick, 286 Ala. 531, 243 So.2d 367 (1970), for the proposition that any employee acting in a managerial or supervisory capacity for a company is an executive officer for the purposes of all general liability policies. This is simply not the case. Waikar is mistaken in his reliance on McCormick. In McCormick an “insured” was defined in the definition section of the policy “to include any executive officer, director or stockholder of the corporation while acting within the line and scope of his duties as such.” The named defendants were McCormick, the president of the corporation; Baird, the vice president of the corporation; and Bodiford, the sewer foreman. The McCormick court concluded that all three defendants were afforded coverage, but it did not discuss why coverage was afforded to Bodiford, the sewer foreman, under the policy.
Subsequent Alabama caselaw has not interpreted McCormick as holding that a foreman qualifies as an executive officer for liability-coverage purposes. In Wolsey v. Aetna Casualty & Surety Co., 346 So.2d 952 (Ala.1977), the supreme court interpreted a policy containing a similar definition of an “insured.” The Wolsey court held that the policy provided coverage to the company president because of his status as an executive officer, but that the policy afforded no coverage to a foreman. In reaching this conclusion the Wolsey court reasoned as follows:
“The evidence was that Butler was employed by Naughton Equipment Company as a foreman and welder; he was paid on an hourly basis; he was not an officer, director or stockholder of the company; and he had no authority to make corporate policy or to make contracts on the company’s behalf.
“We adopt the principle expressed in numerous Louisiana cases that an executive officer exercises managerial responsibility for the affairs of the corporation generally, while an employee does not. *15 Applying this principle to the evidence, it is clear that Butler was only an employee, not an executive official. Such a finding is not contradictory of U.S. Fire Ins. Co. v. McCormick, 286 Ala. 531, 243 So.2d 367 (1970).”
346 So.2d at 953 (citations omitted).
Additionally, in the present case, an endorsement to the policy provided a specific definition of the term “executive officer.” Under that endorsement, “executive officer” was defined as “only a person holding any of the officer positions created by [Tulip corporation’s] charter, constitution, or by-laws.” It is undisputed that none of the named defendants, with the exception of Whitcher and Babcock, were named as officers under Tulip’s corporate charter.
Waikar argues on appeal that the endorsement to the policy was invalid because, he says, it was incorrectly referenced on the declarations page as the result of a clerical error. We do not agree. The correct code for the endorsement was “CG 01 08 11 85.” On the declarations page, the endorsement was incorrectly referenced as “CG108.” Waikar cites American & Foreign Ins. Co. v. Tee Jays Manufacturing Co., 699 So.2d 1226 (Ala.1997), for the proposition that an otherwise unambiguous contract cannot be reformed because of a unilateral clerical error. We do not interpret Tee Jays Manufacturing Co., as determining that a clerical error pertaining to an endorsement or exclusion on the face of the declarations page automatically invalidates that endorsement or exclusion. On the contrary, the supreme court’s decision in Tee Jays Manufacturing Co. seems to provide support for the arguments advanced by the insurer. In Tee Jays Manufacturing Co., the insured was delivered a policy that, because of a clerical error on the part of the insurer, contained a term providing coverage for loss of business income, even though the insured had not requested such coverage and was not charged a premium for that coverage. The insured’s place of business was subsequently destroyed by fire, and the insured submitted a claim for property damage and a claim for business-income loss. The supreme court held that the policy was unambiguous on its face and concluded that the insurer was liable for the coverage for loss of business income despite the fact that the insured had not contracted for this coverage or paid a premium for it.
The supreme court in Tee Jays Manufacturing Co. rejected the insurer’s argument that the policy should be reformed pursuant to Ala.Code 1975, § 8-2-1, based on a unilateral clerical error. In response to this argument, the supreme court reasoned:
“If ‘clerical error or mistake’ as alleged by the defendants under the undisputed facts of this case can form the basis of the reformation of a contract, then there would never be a contract or contract provision, no matter how clear, that would be safe from attack. A clerical error is where ‘Smyth’ is substituted for ‘Smith’ or where ’221.1 acres’ is typed as ’22.11 acres.’ ”
699 So.2d 1226 (Ala.1997).
Insurance contracts are construed to give effect to the intention of the parties, and when the parties’ intention is clear the policies must be enforced according to their terms. State Farm Mut. Auto. Ins. Co. v. Lewis, 514 So.2d 863 (Ala.1987). The evidence in the record indicated that Royal had never offered an endorsement referenced by the code “CG108” at the time that this policy was issued or at any time since. Further, the endorsement itself was contained in the copy of the policy that Royal delivered to Tulip. In addition, the actual endorsement was contained in the copy of the policy produced by the insurance agent for Tulip. There was clear evidence in the record of the intention of the parties to include the endorsement defining the term “executive officer” in the policy that Royal issued to Tulip.
*16 Finally, Waikar contends that the endorsement is void and invalid because, he contends, it was not preapproved by the Alabama Department of Insurance. In support of his claim that the Alabama Department of Insurance had not approved the endorsement, Waikar submitted an affidavit from a rate supervisor for the Department of Insurance, who stated, because the Department has a four-year document-retention policy, he cannot verify whether the endorsement was approved in Alabama. The affidavit lacks probative value because it fails to support Waikar’s position that the endorsement was not approved by the Department of Insurance. The strongest inference one could draw from this affidavit is that the Department is unable to verify, one way or the other, whether it had approved the endorsement. See, e. g., Roberts v. Carroll, 377 So.2d 944, 947 (Ala.1979). Such speculative evidence does not constitute “substantial evidence” and is insufficient as a matter of law. Wint v. Alabama Eye & Tissue Bank, 675 So.2d 383 (Ala.1996).
In response to the affidavit of the rate supervisor for the Department of Insurance, Royal submitted documents obtained from Insurance Services Office, Inc. (“ISO”), that tended to show that the exact endorsement in question had been approved by the Department of Insurance for use in Alabama effective February 1, 1986. ISO is an independent agency that procures approval of insurance-policy language from the various states and provides pre-approved, copyrighted endorsements to its member insurance companies through distribution of a circular. ISO produced documents in response to Wai-kar’s subpoena seeking documents; those documents produced demonstrated that the endorsement had been filed with the Department of Insurance. Royal submitted an affidavit from Lillian Ramirez, a representative of ISO, authenticating the documents produced in response to the subpoena as documents maintained in the ordinary course of business. These documents were produced under a cover letter from an attorney on staff with ISO, which letter stated in part:
“Enclosed please find documents evidencing the approval in Louisiana and Alabama of endorsement CG 01 08 11 85 as well as the authentication affidavit of Lillian Grahame Ramirez.”
Royal also submitted the circular distributed by ISO that contained the endorsement in question, confirming that it had been approved by the Department of Insurance effective February 1,1986.
The dissenting opinion cites Aetna Ins. Co. v. Word, 611 So.2d 266 (Ala.1992), for the proposition that proof that ISO has procured the approval of the Department of Insurance of language contained in an endorsement is insufficient proof that that endorsement has been approved pursuant to Ala.Code 1975, § 27-14-8. The dissenting opinion relies upon Word as requiring an ISO filing to cite the member company on whose behalf the filing is submitted in order to comply with § 27-14-8. Such reliance is misplaced. In Word, the evidence reflects that Aetna was filing policy language on its own behalf during the time in which ISO obtained approval of another endorsement. Word, 611 So.2d at 268. Further, in Word there was no evidence that the endorsement that the Department of Insurance approved upon the submission of ISO was at all similar to the language of the exclusionary endorsement Aetna relied upon in denying coverage; the endorsement that was approved through the ISO filing was not contained in the record in Word.
In the present case, the copyrighted ISO form, which was referenced at the foot of the form as CG 01 08 11 85, was attached to a letter dated December 23, 1985, and addressed to Mr. Tharpe Forrester, deputy commissioner and acting commissioner of the State of Alabama Department of Insurance. The December 23 letter referenced the attached material and submitted that form for approval. The face of the letter was stamped “approved” as of Janu *17 ary 21, 1986, and “effective” as of February 1, 1986. The letter and attachment were properly authenticated by an affidavit of the custodian of records for ISO, Lillian Grahame Ramirez, pursuant to Rule 803(d), Ala. R. Evid.
The circular published and distributed by ISO contained the form that had been approved by the Department of Insurance, and in its publication the form was referenced at the bottom of the document as CG 01 08 11 85. The endorsement in question included in the policy that Royal issued to Tulip was also referenced at the foot of the endorsement as CG 01 08 11 85. Moreover, the language contained in the endorsement is identical to the language contained in the endorsement of the policy Royal issued to Tulip in the present case. Further, the parties do not dispute that Royal was a member of ISO when the Department of Insurance approved endorsement CG 01 08 11 85.[1]
Viewing the evidence in the record in the light most favorable to Waikar, we find substantial evidence to support the holding of the trial court that the endorsement in question was in compliance with § 27-14-8 and was valid and enforceable, and its holding that Royal was not liable for coverage on Waikar’s claims against the remaining defendants.
The judgment of the trial court is due to be affirmed.
OPINION OF APRIL 30, 1999, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; RULE 39(k) MOTION DENIED; AFFIRMED.
ROBERTSON, P.J., and CRAWLEY, J., concur.
YATES and MONROE, JJ., dissent.

. The record contains unrefuted evidence indicating that at all times during the events that led to this action, and during the pen-dency of this litigation, Royal was a member of ISO.