YATES, Judge,
dissenting.
I respectfully dissent from the opinion affirming the trial court’s summary judgment in favor of the defendant, Royal Insurance Company of America, Inc. (“Royal”).
On December 3, 1993, Ravindra J. Wai-kar was seriously injured when his arm was caught and severed in a machine while he was employed at Tulip Corporation (“Tulip”). Waikar sued Tulip and several co-employees. Tulip was insured by Royal under a general-liability-insurance policy. Royal declined to provide coverage for the co-employees.
The policy provided:
‘We will pay those sums that the insured becomes legally obligated to pay as damages because of ‘bodily injury’ or ‘property damage’ to which this insurance applies.... This insurance applies only to ‘bodily injury’ and ‘property damage’ which occurs during the policy period. The ‘bodily injury’ or ‘property damage’ must be caused by an ‘occurrence.’ The ‘occurrence’ must take place in the ‘coverage territory.’ ”
Section II of the policy defined who qualified as an “insured” under the policy as:
“1. If you are designated in the Declarations as:
".....
“c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.”
“2. Each of the following is also an insured:
“a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you.
*18 However, none of these employees is an insured for:
“(1) ‘Bodily injury’ or ‘personal injury’ to you or to a co-employee while in the course of his or her employment.”
An endorsement to the policy, endorsement “CG 01 08 11 85,” defined an “executive officer” as “a person holding any of the officer positions created by your charter, constitution or by-laws.” However, there is a question as to whether this endorsement was ever approved by the Alabama Department of Insurance.
Waikar submitted an affidavit of a rate supervisor at the Department of Insurance, which states that because the Department has a 4-year retention policy, it could not verify whether the endorsement had been approved in Alabama. The rate supervisor stated in his affidavit that it is the normal procedure for the Department to mark any filings to show a stamped “received” date;' to mark the cover letter of the filing “APPROVED,” with the date of approval, as well as “EFFECTIVE,” with the effective date, and “Alabama Department of Insurance.”
In Aetna Insurance Co. v. Word, 611 So.2d 266 (Ala.1992), the supreme court affirmed a summary judgment where the trial court found that an exclusionary endorsement had not been filed with the Department of Insurance. The plaintiff presented an affidavit indicating that the Department of Insurance had no record of such an endorsement being approved. The trial court found that Aetna had failed to produce any documents from its own files to show that it had been approved. Aetna argued that Insurance Services Office, Inc. (“ISO”), had filed endorsements for approval with the Department of Insurance and that one of those endorsements it filed was “just as good” as the endorsement Aetna should have filed. The trial court held that the filing by ISO did not relieve Aetna of its statutory duty under § 27-14-8, Ala.Code 1975, and the trial court wrote, “Being a regulatory statute, § 27-14-8 must be strictly construed and followed.” 611 So.2d at 267. The trial court stated that “there is no proof before the court that [ISO] was authorized or directed to make any submissions on behalf of Aetna.” Id. The filing by ISO did not mention Aetna; it merely stated that the filing was made on “behalf of a member.” 611 So.2d at 268. Additionally, it was unclear as to exactly what endorsement was filed with the Department of Insurance.
Royal, in this case, like Aetna in the other case, relied on a filing by ISO. Here, the filing by ISO merely states that a filing had been made “on behalf of a member.” The filing does not tell who that “member” was. Nothing in the ISO filing indicates that Royal was a member of ISO or that ISO had the authority to act on behalf of Royal. Moreover, just as there was in Aetna, there is a question here as to exactly what was filed. The reference in the filing by ISO is:
“FILING: GL84 084EP
“Commercial General Liability
“Endorsement Portfolio
“Supplement C”
There is no reference in the filing letter to “CG 01 08 11 85” or to indicate that “CG 01 08 11 85” is part of “GL 84 084EP.”
The majority quotes from a cover letter from a staff attorney with ISO, wherein the attorney states that documents produced in response to discovery subpoenas, and authenticated by ISO record keeper Lillian Ramirez, have been approved by the Department of Insurance. However, the ISO records attached to Ramirez’s authentication affidavit do not include proof that the Department of Insurance did indeed approve the endorsement. Royal had the burden of proving that the endorsement was approved, and it failed to do so.
As the court in Aetna noted, the insurance industry is highly regulated. The requirements of § 27-14-8 (requiring that all insurance policies and endorsements, etc., be approved) must be followed before *19 an exclusionary endorsement can be made part of a policy issued in this State. Aetna.
I believe that, based on Aetna, and viewing the evidence in a light most favorable to Waikar, as we are required to do, Royal has not shown that it received approval for the endorsement. Without the endorsement narrowly defining “executive officers” and “directors,” there is a fact question as to whether the policy provided coverage for the co-employees. In United States Fire Ins. Co. v. McCormick, 286 Ala. 531, 243 So.2d 367 (1970), the supreme court determined that the term “executive officer” (used to tell who was insured under the policy at issue) included persons acting in a managerial or supervisory capacity. The foreman involved in McCormick supervised 8 to 10 employees. In this present case, Royal is refusing to provide coverage for the plant manager, who supervises every employee at the plant, and for several “crew chiefs” who in turn supervise other employees.
In Wolsey v. Aetna Casualty & Surety Co., 346 So.2d 952, 953 (Ala.1977), the supreme court adopted the principle that “an executive officer exercises managerial responsibility for the affairs of the corporation generally, while an employee does not.” In Wolsey, the court found that under the facts of that case, a welder/foreman was not entitled to insurance coverage under his company’s general-liability-insurance policy, because the facts did not support a finding that he was an executive officer. However, the court specifically noted that its decision in Wolsey did not contradict McCormick. Instead, the specific facts of Wolsey supported a different conclusion.
In my view, the endorsement was not properly submitted to the Department of Insurance, if it was submitted at all. Therefore, I would hold that the definition in the endorsement cannot be used to deny coverage to the co-employees and that, accordingly, the summary judgment should be reversed and the case remanded for further proceedings.
MONROE, J., concurs.