STEVENSON, J.
In the instant appeal, we must decide whether Palm Beach County has the authority to contract with a third party for the enforcement of lot clearing and code *1110 enforcement liens and then to assign the liens to that private party. We find merit in the arguments raised on appeal and hold that Palm Beach County does have the power to assign such liens and that, under the terms of the contract at issue, there has been no improper delegation of Palm Beach County’s police powers. The final order on appeal is therefore reversed.

Procedural background

Palm Beach County (the “County”) recorded multiple lot clearing and code enforcement liens against real property owned by Thomas C. Charnock.[1] Well before the recording of the liens, the County had contracted with County Collection Services, Inc. (“CCS”) to enforce and collect upon the liens in exchange for a percentage of the amount eventually recovered. By resolution, the County assigned to CCS its right to enforce and foreclose upon the liens recorded against Charnock’s property. When CCS filed a complaint against Charnock attempting to foreclose the liens, Charnock sought to dismiss the complaint, arguing that the County had no authority to assign the lien rights to a third party and that the assignment was an improper delegation of the County’s police power. The trial judge sided with Charnock and dismissed the complaint, finding that the liens were not assignable and that “the County has delegated away its authority and discretion in determining how to proceed in the enforcement of code enforcement liens.” This appeal followed.

The County’s Power to Assign the Liens

In concluding that the County lacked the authority to assign the liens, the trial judge relied upon the supreme court’s decision in Marshall v. C.S. Young Construction Co., 94 Fla. 11, 113 So. 565 (1927). In Marshall, a statute was passed providing for the imposition of a special assessment lien, in favor of the municipality, upon property abutting streets that were paved by the municipality. The statute authorized the enforcement of the lien by “suit at law or in equity, or the collection of the amount by an assessment of a special tax against the lot.” 113 So. at 567. The town of Orange Park entered into a contract with C.S. Young Construction for the paving of certain streets. The contract provided that when the work was complete, the town would “charge the cost of such paving as a lien” against the lots abutting the paved streets, and would assign those liens to the contractor. While the liens were not in fact assigned to the contractor by the town, Marshall, who owned lots abutting the now-paved streets, executed a promissory note in favor of the contractor for his share of the debt. When more than eight years passed and the debt had not been paid, the contractor sued Marshall, seeking to collect on the note, and the town of Orange Park, seeking the promised assignment of the liens. As for the town’s ability to assign the liens to the contractor, the supreme court wrote:
The statute makes provision for the enforcement of the lien for the cost of the improvement against the property by suit at law or in equity, or the collection of the amount by an assessment of a special tax against the lot. There is no authority attempted to be conferred by the statute upon the municipality for the assignment of the latter’s power to assess the cost of the improvement as a special tax upon the lot, nor is there any statutory authority for the assignment of the lien.
Assessments for local improvements form now an important part of the sys *1111 tem of taxation. It is in pursuance of the taxing power delegated by the Legislature to municipalities that the latter may assess against certain property the cost of certain improvements such as grading and paving streets. See R.C.L. 85-144.
[[Image here]]
The right or power of the town to assign the tax or assessment is doubtful, as the amount assessed upon the defendant’s lot is not an ordinary debt arising out of contract, express or implied, but a charge upon the land, growing out of the delegated power to the municipality to assess and collect the amount chargeable for the improvement. The amount is assessed by virtue of the sovereign power in the state to levy taxes and assessments, which power is delegated to the town by the Legislature. It is therefore not an ordinary debt. To hold that the city can assign the power to an individual is to hold that it might authorize an individual to exercise the high and delicate powers conferred upon the municipality for purposes of taxation.
113 So. at 567.
In Marshall, the court found that the special assessment lien for the improvements was not assignable for two reasons: (1) the power to enforce the lien involved the exercise of the governmental power to tax, which belonged exclusively to the government, and (2) the statute authorizing the imposition of the lien did not grant the municipality the power to assign it. In subsequent years, the supreme court revisited the assignability of government liens, receding from its position that these types of liens could not be assigned because the power involved was one exclusive to government. See Buffum v. Stokes, 101 Fla. 984, 133 So. 75, 77 (1931)(holding that “[t]he conferring of the power by statute authorizing a lienholder to sue and enforce [a governmental paving lien] in his own name violates no provision of the constitution”); Hubbard Constr. Co. v. City of Orlando, 67 So.2d 675 (Fla.1953)(en banc)(stating that the effect of Buffum was to limit Marshall’s prohibition against the assignability of paving lien certificates “to the situation where the assignment was made without statutory authority”). Following the court’s decisions in Buffum and Hubbard Construction, all that remained of Marshall’s prohibition of a municipality’s assignment of liens in its favor was the lack of statutory authorization.
Marshall’s prohibition of the assignment of municipal liens unless specifically authorized by statute must be viewed in the context of the power afforded municipalities at that time. Pre-1968, Florida’s constitution limited the powers of municipalities to those powers given them by the legislature. See Art. VIII, § 8, Fla. Const. (1885); State ex rel. Stephens v. City of Jacksonville, 103 Fla. 177, 137 So. 149, 151 (1931)(interpreting article VIII, section 8 of Florida’s constitution to mean that “a municipal corporation must receive all its powers, rights, and franchises from its creator, the Legislature, and it can only exercise those municipal powers which are conferred by the Legislature”). As the result of the work of the 1968 Revision Commission, article VIII was amended to grant municipalities the powers needed to perform municipal functions and services unless these powers were expressly taken away. See Art. VIII, § 2(b), Fla. Const. (1968).[2] At the time Marshall was decid *1112 ed, a municipality had only those powers given to it by the legislature; since the town of Orange Park had not been expressly given the authority to assign the liens, it lacked the power to do so. Following the 1968 amendments to Florida’s constitution, a municipality has all the power necessary to govern unless that power is taken away by the legislature.
Returning to the instant case, just as Florida’s constitution was amended to afford municipalities greater power, it was also amended to afford counties greater “home rule” power. Following the 1968 amendments, Article VIII, section 1(g) gives charter counties, like Palm Beach County, “all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors.” The parties have not cited and we have not found any statutory authority which precludes a county from assigning code enforcement and lot clearing liens. Consequently, we must conclude that the County has the power to assign these liens. Moreover, we find no merit in Charnock’s contention that this assignment must result from an ordinance, rather than by resolution.

The County’s Police Power

Lastly, we reject appellee’s argument that the assignment of the liens in this case is an improper delegation of the County’s police powers. Assuming that the County’s assessment and foreclosure of the liens is an exercise of its police power' — an issue we need not decide- — under the facts of this case, there has been no improper delegation of authority and discretion. The County’s contract with CCS retains in the County (1) the power to decide which liens to assign; (2) the power to decide what collection techniques are permissible and to prohibit the use of any technique it finds objectionable; (3) the power to take back any assigned debt or lien; and (4) the power to terminate the contract for any or no reason. Compare State v. City of Tampa, 113 So.2d 844 (Fla.1959), and St. Johns County v. Northeast Fla. Builders Ass’n, 583 So.2d 635 (Fla.1991), both finding that the government had retained sufficient power and authority such that there was no improper delegation of police power, with City of Belleview v. Belleview Fire Fighters, Inc., 367 So.2d 1086, 1088 (Fla. 1st DCA 1979), finding improper delegation where, under the contract between the City and a private entity, “the City was powerless to direct the exercise of the police power in the fire fighting area.”
We reverse the order of the trial court dismissing CCS’s complaint against Char-nock seeking to foreclose upon the liens and remand for further proceedings.
REVERSED and REMANDED.
FARMER and GROSS, JJ., concur.

. The complaint also named Joe Elle Manían, W. Bryant Charnock, and Robert Rosenblatt. Only Thomas C. Charnock filed an answer to the complaint.

. "Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law.” Art. VIII, § 2(b), Fla. Const. (1968).